MINNIE W. YATES v. JOSEPH B. BROWN AND WIFE LOUISE W. BROWN

No. 7

(Filed 19 November 1969)

1. **Contracts § 12;   Bills and Notes § 16—   action on note — indorsement — question of law or fact**

   Where there was no dispute as to the contents or the genuineness of the writing on the back of a negotiable note, and no conflict in the evidence as to the circumstances under which it was signed, it was a question of law for the court whether the writing constituted a qualified or an unqualified indorsement, and submission of the question to the jury was erroneous.

2. **Bills and Notes § 9—   action on indorsement — construction of documents**

   In an action by the indorsee of a negotiable note to recover from the indorsers upon an alleged contract of indorsement contained on the back of the note and in a contemporaneously executed document entitled "Assignment and Transfer," the writing on the back of the note and the "Assignment and Transfer" in the separate document must be construed together in determining whether the defendants undertook a general or qualified indorsement.

3. **Bills and Notes §§ 7, 9—   action on note — whether indorsement was qualified or unqualified**

   The words "for valuable considerations, this note, together with the deed of trust securing it, is transferred and assigned to Y," appearing on the back of a note and signed by defendants, when considered with a contemporaneously executed instrument entitled "Assignment and Transfer" in which the defendants warranted to plaintiff that there were no prior liens on the property secured by the deed of trust, except for the first deed of trust, and that all of the stated indebtedness was outstanding except for payments to a savings and loan association, *are held* to constitute a qualified indorsement, the language of the entire contract and the circumstances surrounding the execution thereof being insufficient to support a finding that the defendants undertook the engagement of a general indorser to pay the plaintiff the amount of the note if it were

dishonored by nonpayment. Negotiable Instruments Law §§ 65, 66 [former G.S. 25-71, G.S. 25-72].

**4. Contracts § 12— construction — consideration of entire contract**

In determining what is the contract between the parties thereto, the entire contract, proved by competent evidence, or admitted, must be taken into account.

**5. Bills and Notes § 7— indorsement — proof of contract between indorsee and indorser**

Although any contract upon a negotiable instrument, including the contract of an indorser thereof, is a "courier without luggage" so as to preclude proof of a separate agreement inconsistent therewith, even though written, in a suit by a holder in due course, this does not preclude consideration of the entire agreement, proved by competent evidence or admitted, in a suit between an indorsee and his indorser upon the alleged contract of indorsement.

**6. Contracts § 12— construction — contemporaneous instruments**

All contemporaneously executed written instruments between the parties, relating to the subject matter of the contract, are to be construed together in determining what was undertaken.

**7. Bills and Notes §§ 7, 19— construction of indorsement — proof of surrounding circumstances**

In an action by the indorsee of a negotiable note to recover from the indorsers upon an alleged contract of indorsement contained on the back of the note and in a contemporaneously executed document entitled "Assignment and Transfer," undisputed circumstances surrounding the execution of the written documents may be considered by the court in construing the written contract, insofar as these circumstances cast light upon the intent of the parties as to the meaning of the written words.

**8. Bills and Notes § 9— action on general indorsement — amount of recovery**

The fact that the consideration paid by an indorsee for the transfer of notes was approximately 50 percent of the face value of the notes does not preclude the indorsee from recovering the full face value of one of the notes, where the indorsers undertook a contract of general indorsement.

**9. Bills and Notes §§ 9, 20— indorsement prepared by plaintiff's attorney — presumptions — resolution of ambiguity**

Where the contract of indorsement of a negotiable note was prepared by plaintiff's attorney, any ambiguity in the contract must be resolved, if reasonably possible, by construction favorable to the defendants; and the attorney must be assumed to have drafted the contract with the provisions of the Negotiable Instruments Law in mind.

**10. Bills and Notes § 7— functions of an indorsement**

An indorsement of a negotiable note has two independent aspects or functions: (1) it negotiates the paper, as contrasted with a mere assignment of it, so as to make the taker a "holder" and, if the other requisites

for such status are present, a "holder in due course;" (2) it is, itself, a contract separate and apart from the contract, or contracts, of prior parties so transferred to the new holder.

**11. Bills and Notes § 7;   Uniform Commercial Code § 3— indorsement — what law governs**

    A contract of indorsement, signed and delivered prior to the adoption of the Uniform Commercial Code, is not affected by any changes made by the Code in the rules of the Negotiable Instruments Law, which the Code superseded on 30 June 1967. G.S. 25-10-101.

ON certiorari to the Court of Appeals to review its decision in 4 N.C. App. 92.

The plaintiff is the holder of a negotiable note made by one Lutz and wife payable to the order of the defendants. The makers having failed to pay the note when due, the plaintiff sues the defendants, contending that they are liable to her as general indorsers. The defendants admit that they transferred this note and the second deed of trust securing it, together with ten other notes and second deeds of trust, but they contend their undertaking was that of a qualified indorser and, therefore, they are not liable to the plaintiff. The alleged indorsement upon the back of the note reads as follows:

    "For valuable considerations, this note, together with the deed of trust securing it, is transferred and assigned to Minnie W. Yates. This 18th day of October, 1963.

                            Joseph B. Brown (Seal)
                            Louise W. Brown (Seal)."

It is not contended that there is any infirmity in the note or that the makers have any defense thereto. Conversely, the defendants do not deny that the note is due and is unpaid. The prior encumbrance on the security has been foreclosed. The sole question is as to the nature and extent of the undertaking of the defendants.

The following facts are not in controversy and appear from the evidence offered by the plaintiff, or from admissions in her pleadings:

The entire transaction between the parties was handled for the plaintiff by her husband, an attorney in active practice. Mr. Brown approached Mr. Yates, stating that he had some notes which had several years to run and which he would like to sell at a discount and requesting Mr. Yates to endeavor to "sell them or handle them for him." Mr. Yates examined the notes and the properties described in the deeds of trust securing them. He then advised Mr. Brown that Mrs. Yates would purchase the notes.

Mr. Yates then caused the above quoted statement to be typed upon the back of each of the notes and also drafted a separate instrument, which is designated "ASSIGNMENT AND TRANSFER." This separate instrument, after reciting that the plaintiff "has this day purchased said notes and deeds of trust" and that for "Ten Dollars and other valuable considerations the parties of the first part [the Browns] do hereby transfer, assign, and convey the notes and deeds of trust hereinafter set forth," lists eleven notes and deeds of trust, including the note here in question, totaling $22,000 in face value, and provides:

> "And the parties of the first part do warrant that there are no liens and encumbrances against said property prior to the aforementioned deeds of trust, with the exception of a deed of trust to Randolph Savings and Loan Association on each of said tracts, and with the exception of 1963 County and Town, if any, taxes, and do warrant and agree that they will hold the party of the second part harmless in the event any liens of record should have become ahead of the aforementioned deeds of trust after the recording of the deeds of trust to the Randolph Savings and Loan Association and prior to the recording of the aforementioned deeds of trust.

> "And the said parties of the first part do further warrant that all of the indebtedness above set forth is outstanding with the exception of payments into the Randolph Savings and Loan Association on their account as shown on the Randolph Savings and Loan deposit books as of 9:00 A.M., October 18, 1963, and do further warrant that the parties of the first part have personally received no payments on said notes and indebtedness; that there are no counterclaims or set-offs against the parties of the first part and in favor of any of the owners of said property."

On 18 October 1963, the Browns went to Mr. Yates' office and signed the previously prepared statements on the backs of the several notes and the above quoted separate document entitled "ASSIGNMENT AND TRANSFER." For the transfer of the eleven notes and deeds of trust the Browns were paid $12,010. Nothing has been paid on the Lutz note and there is now due thereon $2,050 with interest from 20 August 1963. Demand for payment thereof was made upon Mr. and Mrs. Brown but no payment has been made by them.

Upon the conclusion of the plaintiff's evidence, the defendants moved for judgment of nonsuit, which was denied. The defendants

then introduced evidence which did not controvert any of the above stated facts appearing in the evidence offered by the plaintiff. At the conclusion of the defendants' evidence, the motion for judgment of nonsuit was renewed and was again denied.

The superior court sustained objections to questions propounded by the defendants to witnesses concerning oral statements by the defendants and Mr. Yates in the course of negotiations leading to the transfer of the notes and deeds of trust.

The superior court submitted to the jury one issue: "What amount, if any, is the plaintiff entitled to recover of the defendants?" The court instructed the jury at length concerning the negotiation and transfer of negotiable instruments and the different types of indorsements, leaving it to the jury to determine whether the alleged indorsement of the note in question was "unqualified." The jury answered the issue: "$2,050 plus interest from August 20, 1963." Judgment in accordance with the verdict was entered in favor of the plaintiff.

The defendants appealed to the Court of Appeals, assigning as error the denial of their motion for judgment of nonsuit, various rulings of the superior court excluding evidence offered by the defendants, and numerous portions of the charge to the jury. The Court of Appeals found no error in these rulings. It held that the alleged indorsement of the note in question was "an unqualified indorsement" and there was no error in refusing to permit the defendants to introduce parol evidence to show a contemporaneous agreement to the contrary.

*Ottway Burton for defendant appellants.*

*Coltrane and Gavin and H. Wade Yates for plaintiff appellee.*

LAKE, J.

[1] It was error for the trial court to submit to the jury the question of whether the writing and signatures upon the back of the note in suit constituted a qualified or an unqualified indorsement. There being no dispute as to the content or the genuineness of the writing and no conflict in the admitted evidence as to the circumstances under which it was signed, the effect of it was a question of law for the court. *Lowe v. Jackson,* 263 N.C. 634, 140 S.E. 2d 1; *Robbins v. Trading Post,* 253 N.C. 474, 117 S.E. 2d 438; *Evans v. Rockingham Homes, Inc.,* 220 N.C. 253, 17 S.E. 2d 125; *Dillard v. Mercantile Co.,* 190 N.C. 225, 129 S.E. 598; 11 Am. Jur. 2d, Bills and Notes, § 61.

**[2]** It was also error for the trial court, in instructing the jury concerning the construction of the writing upon the back of the note, to disregard or ignore the effect thereupon of the undisputed, contemporaneously executed, written instrument designated "Assignment and Transfer." This document is not mentioned in the court's charge to the jury except in the court's review of the evidence and of the contentions of the parties. The jury, having been erroneously saddled with the task of construing the writing upon the back of the note, was given no instruction as to the legal effect upon it of the separate but contemporaneously executed "Assignment and Transfer." In effect, the jury was instructed to disregard it.

By answering the issue submitted to it in favor of the plaintiff, the jury, necessarily, construed the writing and signature upon the back of the note as a general or unqualified indorsement. In affirming the judgment rendered in the superior court upon this verdict, the Court of Appeals held, as a matter of law, that the defendants made a general or unqualified indorsement of the note. If this were the correct construction of the contract made by the defendants, the jury having reached the conclusion so compelled by the law, the above mentioned errors of the superior court would be harmless and would not justify disturbance of its judgment. We turn, therefore, to the construction of the defendants' contract, shown by the evidence of the plaintiff and by the admission in her pleadings concerning the separate instrument designated "Assignment and Transfer." The latter document was not mentioned by the Court of Appeals except in a brief summary of the defendants' pleading and evidence in the court's statement of the facts.

**[3]** We are not here concerned with the rights of a holder in due course of a negotiable note against a party thereto who asserts a defense good as against an intermediate party to the instrument. This is a suit upon an alleged contract of indorsement by the alleged indorsee against the alleged indorser. The sole question is, What was their contract?

**[4, 5]** As between the immediate parties to it, the entire contract, proved by competent evidence, or admitted, must be taken into account in answering this question. *Robbins v. Trading Post, supra.* Although any contract upon a negotiable instrument, including the contract of an indorser thereof, is a "courier without luggage" (*Overton v. Tyler,* 3 Pa. 346), so as to preclude proof of a separate agreement inconsistent therewith, even though written, in a suit by a holder in due course (*Sykes v. Everett,* 167 N.C. 600, 83 S.E. 585; Stansbury, North Carolina Evidence, 2d Ed, § 256), this does not

preclude consideration of the entire agreement, proved by competent evidence or admitted, in a suit between the immediate parties thereto; i.e., a suit between an indorsee and his indorser upon the alleged contract of indorsement. 11 Am Jur 2d, Bills and Notes, § 619.

The Court of Appeals found no error in the rulings of the trial court sustaining objections to evidence offered by the defendants of oral statements made prior to, or contemporaneously with, the execution of the alleged indorsement and of the separate "Assignment and Transfer," the purpose of the evidence being to show that the writing upon the back of the note was intended by the parties to be an indorsement "without recourse"; that is, a qualified indorsement. In *Kindler v. Trust Co.,* 204 N.C. 198, 167 S.E. 811, it was held that one, who had indorsed a negotiable note in blank, could not introduce evidence of an oral agreement to the effect that the indorsee would rely solely upon the collateral securing the note and would under no circumstances call upon the indorser to pay it. There, the proposed oral evidence clearly contradicted the contract of indorsement. The court said: "The indorsement itself imports liability. When a contract is reduced to writing parol evidence will not be heard to contradict, vary, or add to the written instrument." In the *Kindler* case, however, the court recognized that "in proper cases" it may be shown by parol evidence that payment was to be made out of a particular fund or that the obligation was to be discharged in a certain way. Obviously, the effect of such evidence is to "add to" the written instrument. In *Sykes v. Everett, supra,* in a suit by one not a holder in due course, an indorser was permitted to show by parol evidence a contemporaneous agreement that he would not be called upon to pay the note until certain collateral had been exhausted. See also Stansbury, North Carolina Evidence, 2d Ed, § 256, for a discussion of the use of parol evidence to show the true contract between the immediate parties to a contract upon a negotiable instrument.

In the present case, we need not determine the correctness of the rulings of the trial judge in sustaining objections to parol evidence offered by the defendants for the reason that the written agreement proved or admitted by the plaintiff, considered in its entirety and construed in the light of circumstances shown by the plaintiff's own evidence, requires the conclusion that the defendants did not undertake the obligations of a general indorser.

[2, 6] All contemporaneously executed written instruments between the parties, relating to the subject matter of the contract, are to be construed together in determining what was undertaken. *Combs*

*v. Combs*, 273 N.C. 462, 160 S.E. 2d 308; *Smith v. Smith*, 249 N.C. 669, 107 S.E. 2d 530. This is not varying the written contract. It is a construction of the written contract in its entirety. Thus, in the present case, the writing on the back of the note and the "Assignment and Transfer" in the separate document must be construed together in determining what the defendants undertook or contracted. 11 Am Jur 2d, Bills and Notes, §§ 70 and 619; Restatement of the Law, Contracts, § 235(c); Strong, North Carolina Index 2d, Contracts, § 13.

**[7, 8]** Undisputed circumstances surrounding the execution of the written documents may be considered by the court in construing the written contract, insofar as these circumstances cast light upon the intent of the parties as to the meaning of the written words. *Chew v. Leonard*, 228 N.C. 181, 44 S.E. 2d 869; *Jones v. Casstevens*, 222 N.C. 411, 23 S.E. 2d 303. The plaintiff's evidence shows that the consideration paid by her for the transfer of the entire lot of eleven notes and deeds of trust was approximately 50 per cent of the face value of the notes. Of course, this does not preclude the plaintiff from recovering the full face value of the note here in question if the defendants did, in fact, make the contract of a general indorser (11 Am Jur 2d, Bills and Notes, § 346), but it is a relevant fact to be considered in the construction of the written undertaking.

**[9]** It is undisputed that the entire written contract, both the statement upon the back of the note and the "Assignment and Transfer" upon the separate paper, was prepared by the plaintiff's attorney. This has no bearing upon the matter except that, for this reason, any ambiguity in the contract must be resolved, if reasonably possible, by construction favorable to the defendants (*Root v. Insurance Co.*, 272 N.C. 580, 158 S.E. 2d 829; *Trust Co. v. Medford*, 258 N.C. 146, 128 S.E. 2d 141; *Realty Co. v. Batson*, 256 N.C. 298, 123 S.E. 2d 744) and the draftsman, being an attorney familiar with the provisions of the Negotiable Instruments Law concerning the effect of the different types of indorsement, must be assumed to have drafted this agreement with those provisions in mind.

**[3, 10]** An indorsement of a negotiable note has two independent aspects or functions. *First*, it negotiates the paper, as contrasted with a mere assignment of it, so as to make the taker a "holder" (Negotiable Instruments Law, §§ 30 and 191, formerly G.S. 25-35 and G.S. 25-1) and, if the other requisites for such status are present, a "holder in due course." *Second*, it is, itself, a contract separate and apart from the contract, or contracts, of prior parties so transferred to the new holder. Admittedly, the writing upon the back of the in-

strument in this case, signed by the defendants, was an indorsement by which the plaintiff became the "holder" of the instrument. Britton, Bills and Notes 2d, § 58. This does not determine the scope of the contract between the defendant indorsers and the plaintiff indorsee for there is more than one kind of indorsement liability-wise. The question in this case is, Did the defendants undertake the "warranties" and the "engagement" of a general indorser or only the "warranties" of a qualified indorser? To determine this, we must look at their entire written agreement in the light of the circumstances above mentioned. We may not limit our consideration to the words written upon the back of the note itself.

**[11]** The contract of the defendants, having been signed and delivered prior to the adoption of the Uniform Commercial Code, the present G.S. Chapter 25, is not affected by any changes which may have been made by that Act in the rules laid down in the Negotiable Instruments Law, which the Code superseded on 30 June 1967. G.S. 25-10-101. Under the Negotiable Instruments Law, a general indorser warrants: (1) The instrument is genuine and in all respects what it purports to be; (2) he has a good title to it; (3) all prior parties had capacity to contract; and (4) the instrument is valid and subsisting. In addition to these warranties, the general indorser "engages" that the note will be paid when presented for payment and if it is dishonored by nonpayment and he is properly notified thereof, he will pay the amount of it to the holder. Negotiable Instruments Law, § 66, formerly G.S. 25-72.

Under the Negotiable Instruments Law, a qualified indorser makes the first three of the above warranties, but, in lieu of number 4, he warrants only that he knows of no fact which would impair the validity of the instrument or render it valueless, and he does not make the further "engagement" made by the general indorser or any "engagement" in lieu thereof. Negotiable Instruments Law, § 65, formerly G.S. 25-71.

**[3]** Here, there is no contention that there has been any breach by the defendants of any of the warranties of either a general or a qualified indorser. The plaintiff's case rests upon an alleged breach of the "engagement" of the general indorser. The question is, Taking the entire written contract into consideration, in light of the above mentioned circumstances surrounding its execution, did the defendants make that engagement? If so, there is no doubt about their breach of it, or about the amount recoverable therefor. The construction of that contract being a question of law for the court, either the plaintiff was entitled to a peremptory instruction that, if the jury believed the evi-

dence, it would answer the issue which was submitted, "$2,050, with interest thereon from August 20, 1963," or the defendants were entitled to a judgment of nonsuit or to a directed verdict in their favor.

In *Medlin v. Miles,* 201 N.C. 683, 161 S.E. 207, apparently the most recent consideration of the matter by this Court, the words "For value received I hereby sell, transfer and assign all my right, title and interest to within note to J. C. Medlin," appearing upon the back of a negotiable note and signed by the defendant, were held to constitute a qualified indorsement. To the same effect is a dictum by this Court in *Evans v. Freeman,* 142 N.C. 61, 54 S.E. 847. In the earlier case of *Davidson v. Powell,* 114 N.C. 575, 19 S.E. 601, the words "For value received I assign over the within note," appearing upon the back of a negotiable note and signed by the defendant, were held to be a general indorsement in absence of proof by the indorser of a different agreement. *Davidson v. Powell* was not cited in either *Medlin v. Miles* or *Evans v. Freeman.* While the language of the indorsement in *Medlin v. Miles* and in *Evans v. Freeman* is somewhat more akin to the terminology customarily found in a quitclaim deed, these cases cannot be satisfactorily distinguished from *Davidson v. Powell. Medlin v. Miles* being the later decision, it would control the decision in *Davidson v. Powell* to the extent of any inconsistency. As noted in *Medlin v. Miles,* there is respectable authority in other jurisdictions for and against the view that an assignment of the transferor's right, title and interest, written upon the back of a negotiable note and signed by him, is a general indorsement. See: Britton, Bills and Notes, 2d Ed, § 58, pp. 139-140; 11 Am Jur 2d, Bills and Notes, § 363; Annot., 44 A.L.R. 1353; 36 Mich. L. Rev. 483; 10 N.C. L. Rev. 306. The majority view in other jurisdictions is contrary to the decision in *Medlin v. Miles.*

It is not necessary in the present case to determine whether the statement appearing upon the back of the note in question and signed by the defendants, standing alone, would constitute a general indorsement as held by the Court of Appeals. A more extensive statement of the defendants' contract with the plaintiff appears when the separate "Assignment and Transfer" is taken into account. The plaintiff's attorney drafted that document and the statement upon the back of the note. An experienced and competent attorney, it must be assumed that he did not require the defendants to sign an instrument which added to the words which he had written on the back of the note nothing of value to his client. If, by signing the statement upon the back of the note, the defendants were deemed to be undertaking the "engagement" of a general indorser to pay the note if the maker did not do so, the warranties which were incorporated in

the "Assignment and Transfer" would be of no real consequence since the liability of the defendants would not be increased thereby. It seems obvious that, at the time this transaction was accomplished, the plaintiff's attorney, and so the plaintiff, did not regard the signing of the statement on the back of the note as a general indorsement.

Taking into account: (1) The language used in drafting both parts of the contract; (2) the fact that the draftsman was the plaintiff's attorney; and (3) the substantial discount reflected in the purchase price of the eleven notes, it seems clear that the parties did not, at the time of the contract, contemplate that it was to, or did, include the above mentioned "engagement" of a general indorser. Consequently, the superior court should have granted the motion of the defendants for a judgment of nonsuit. The decision of the Court of Appeals and the judgment of the superior court are, therefore,

Reversed.