THE WINDFIELD CORPORATION v. McCALLUM INSPECTION COMPANY

No. 731SC160

(Filed 23 May 1973)

1. Contracts § 12— ambiguous agreement — court interpretation

Where the terms of a contract were ambiguous with respect to defendant's responsibility for installing plastic pipe as part of a water system, interpretation by the court was required where dispute arose upon that point of the contract.

---

**Windfield Corp. v. Inspection Co.**

---

2. **Contracts § 12— ambiguous agreement — extrinsic evidence**

If contract terms are ambiguous, extrinsic evidence relating to the agreement may be competent to clarify its terms.

3. **Appeal and Error § 57— findings supported by competent evidence — conclusiveness on appeal**

Finding by the judge in a nonjury trial that defendant contracted to furnish and install plastic pipe as part of a water system in plaintiff's residential development was supported by extrinsic evidence that defendant was responsible for digging the ditch in which to lay the pipe and that defendant arranged with subcontractors for the pipe installation and assumed responsibility for at least part of repair work required because of leaks in the system; such finding is conclusive on appeal since it was supported by competent evidence.

4. **Contracts § 12— construction of ambiguity**

Where defendant prepared a contract in which it agreed to furnish labor and materials for the installation of a water system in plaintiff's subdivision, ambiguity with respect to defendant's responsibility to install certain plastic pipe must be resolved against it, and the trial court did not err in holding that defendant was obligated to install as well as to furnish the pipe.

5. **Damages § 12— special damages — necessity for specific pleading**

A sum which plaintiff allegedly spent in its efforts to repair the water system installed by defendant was an item of special damages which should have been specifically pleaded; failure of plaintiff to so plead requires that the portion of the judgment awarding the special damages be vacated.

APPEAL by defendant from *Tillery, Judge,* at the 1 May 1972 Civil Session of PASQUOTANK Superior Court.

Plaintiff instituted this action to recover damages for alleged breach of a contract in which defendant agreed to furnish labor and materials for the installation of a water system in plaintiff's Glen Cove Subdivision in Pasquotank County. Defendant counterclaimed for a balance allegedly due it. Jury trial was waived.

The contract is in the form of a proposal made by defendant to plaintiff on 23 September 1968 and accepted by plaintiff on 24 September 1968, substantially set forth as follows:

PROPOSAL SUBMITTED TO:

Name: Windfield Corp.　　Date: Sept. 23, 1968

Street: 4565 Virginia Beach Blvd.

Job Name: Glen Cove

City: Virginia Beach      Street: Route 168

State: Virginia      City: Weeksville

                        State: N. C.

We hereby submit specifications and estimates for:

| | |
|---|---|
| Drill and construct 4-4″ wells (shallow) to meet with N. C. Code, complete with 8 hour pumping test | 1900.00 |
| Furnish and install 4— 1 H.P. submersible pumps complete with wire (to top of well) control box, pipe & seal hooked to tank | 1300.00 |
| Furnish 1—5,000 gal. standard pressure tank (ordered 6-27-69) | 1866.00 |
| Labor & Material for hooking tank to pump & water main | 1025.00 |
| 11,800 feet of 4″ plastic P.V.C. rigid pipe | 22396.40 |
| 108—4″ tees—4x4x2 at 9.36 ea. | 1010.88 |
| 8—4″ tees—4x4x4 at 9.36 ea. | 74.88 |
| 108—2x¾ bushings at .77 ea. (Male XFIPT) | 83.16 |

*  *  *

| | |
|---|---|
| 108—plugs (MIPT) at $.36 each | 38.88 |
| 6—4″ 90 deg. ells | 47.70 |
| 10—4″ 45 deg. ells | 75.00 |
| 1—4″ adapter | 4.00 |
| 4—4″ caps | 14.20 |
| 6—gal. pipe cleaner | 50.40 |
| 6—gal. pipe cement | 71.82 |
| 11,800 ft. of ditching for pipe lines | 4012.00 |

Pump house, tank foundations, electrical work and surveying for pipeline to be done by owner.

We hereby propose to furnish labor and materials—complete in accordance with the above specifications, for the sum of THIRTY-EIGHT THOUSAND, three hundred & three dollars & twenty-four cents (dollars) (33,970.32) (L.Y.O.J.F.) with payment to be made as follows: _____

All material is guaranteed to be as specified. All work, to be completed in a workmanlike manner according to standard practices. Any alteration or deviation from above specifications involving extra costs, will be executed only upon written orders, and will become an extra charge over and above the estimate. All agreements contingent upon strikes, accidents or delays beyond our control. Owner to carry fire, tornado and other necessary insurance. Our workers are fully covered by Workmen's Compensation Insurance.

Authorized Signature: Lester L. Young

Lester L. Young, Operations Manager

---

### ACCEPTANCE OF PROPOSAL

The above prices, specifications and conditions are satisfactory and are hereby accepted. You are authorized to do the work as specified. Payment will be made as outlined above.

Signature: The Windfield Corp.

Signature: F. P. Gabriel, Jr., Pres.

ACCEPTED:
Date: Sept. 24, 1968

---

(It will be noted that the total of the amounts listed above is $33,970.32.)

The controversy between the parties centers primarily on the following items in the proposal: "11,800 feet of 4″ plastic P.V.C. rigid pipe—22396.40" and "11,800 ft. of ditching for pipe lines—4012.00." Plaintiff contends that the contract contemplated that defendant would furnish *and install* the 4″ water lines in "a workmanlike manner according to standard practices." Defendant contends that it agreed to supply the 4″ water lines and dig the ditches for the lines but that it was plaintiff's responsibility to "lay" and connect the pipe.

Plaintiff's evidence in pertinent part tended to show:

On 13 May 1970 George Merjos (Merjos) purchased all of plaintiff's outstanding stock. At that time the Glen Cove Subdivision water system was near completion and the only portion of the system then visible was the pump house, a large 5,000 gallon storage tank and two pumps. On 14 May 1970 Merjos received from one Lester Young (Young), who was supervising the job for defendant, a letter stating that the job would be completed within ten days after the electrician finished the wiring. After the electrical hook-up was completed, Young tested the main water system for leaks; any wet spots observed along the side of the road or water bubbling through the dirt indicated a leak. Two or three leaks were found the first part of June 1970. Near the end of June 1970, a second test was conducted; pressure was again applied and Young found ten leaks. Young and a crew of men repaired these leaks during the first or second week of July 1970. The water was again turned on and an additional sixteen leaks were found. Young informed Merjos that a job in Maryland would require most of his (Young's) time; therefore, it was agreed that a Mr. Ricks would repair the leaks and that defendant would pay one-half the bill and plaintiff would pay the other half. The sixteen leaks were repaired; water was turned on and 26 new leaks were found. A Mr. Brinson was hired to fix these. Plaintiff then retained Brinson on a salary basis to live at the development and repair leaks. By November 1970 a total of 137 leaks had been repaired.

On 4 December 1970 plaintiff employed an engineer to appraise the existing water system. The engineer concluded that the water system in Glen Cove "wasn't functional." When asked by counsel if in his opinion the water system at the time inspected could have been repaired, the engineer replied, "[I]n my opinion it could not economically be repaired."

Plaintiff's evidence further indicated that defendant did not install the four-inch plastic pipes for the water system but arranged for two subcontractors to install the pipes and paid for the cost of installation. Testimony tended to show that four-inch plastic P.V.C. rigid pipe schedule PR160 in quantities exceeding 5000 feet had a value of between 65 and 70 cents per foot in 1968. Defendant's president indicated that he didn't "know anything about the prevailing price in 1968" and had

no knowledge whether defendant paid 75 cents or $1.89 per foot for the pipe.

With respect to the 4″ water lines, defendant's evidence tended to show: Defendant furnished 11,800 feet of 4″ plastic P.V.C. schedule 40 rigid pipe NSF which had a suggested list price of $1.89 per foot in the Glen Cove area in 1968; the 11,800 feet of ditching called for in the proposal and acceptance was performed. Prior to the installation of any 4″ pipe and after defendant had completed the ditching, defendant's supervisor, Mr. Young, consulted with plaintiff's manager concerning the installation of the pipe. Defendant wanted the pipe installed as soon as the ditches were ready and since plaintiff did not have anyone to put the pipe in the ground, at the request of plaintiff's manager, Young arranged for the pipe to be laid. Defendant did not pay the subcontractors for laying the pipe. After conducting a pumping test, a few leaks—less than a dozen—were found which defendant at its own expense repaired, not out of duty since defendant was not responsible for installing the pipe but to accommodate plaintiff. Defendant participated in sharing the cost of repairing leaks on two occasions.

From the stipulations and evidence offered the court found facts summarized in pertinent part as follows: The proposal and acceptance hereinafter termed "the written contract" obligated the defendant to furnish materials and labor for the construction and installation of a water system at Glen Cove and obligated plaintiff to pay $33,970.32 therefor. The written contract is ambiguous with respect to whether defendant undertook to install 11,800 feet of four-inch plastic pipe; the price of $22,396.40 referred to as cost for pipe is substantially more than some of the evidence indicates material without labor would cost. The assumption of responsibility for installation of the pipe by defendant is some evidence of the intention of the parties with respect to duty to install it. The court finds that defendant contracted to furnish and install the said pipe. The pipe comprising the water distribution system was not laid "in a workmanlike manner and according to standard practices." The defective manner of installation resulted in numerous leaks. Other defects were found to exist as a result of defective drilling and construction of wells and installation of submersible pumps and storage pressure tanks. The water system as completed by defendant is not functional and constitutes a breach of the contract between the parties for which

plaintiff is entitled to damages. Before learning of defendant's breach of the contract, plaintiff paid a total of $26,970.32 to defendant. The water system properly installed would be worth $33,970.32 to plaintiff and the parties stipulated that the water system as installed had a value of at least $4,334.92.

The court concluded as a matter of law that: Defendant "was obligated to construct and install the water system in a workmanlike manner and according to standard practices." Defendant breached its contract with plaintiff and as general damages, plaintiff "is entitled to recover the difference in value between the water system as contracted for ($33,970.32) and the value of that portion of the water system which has some usefulness ($4,334.92), which difference is $29,635.40, less the unpaid portion of the contract price ($7,000.00), for total general damages of $22,635.40." Plaintiff is entitled also to recover as special damages $4,409.63 incurred by plaintiff in repair bills.

From judgment entered that plaintiff recover of defendant the sum of $27,045.03 together with interest and costs of the action and that defendant's counterclaim be dismissed, defendant appealed.

*Leroy, Wells, Shaw, Hornthal & Riley by J. Fred Riley for plaintiff appellee.*

*J. Kenyon Wilson, Jr., for defendant appellant.*

BRITT, Judge.

[1] Basic to a determination of this case is a construction of the contract set out above and particularly that provision of the contract with reference to "11,800 feet of 4″ plastic P.V.C. rigid pipe." Defendant contends that the contract is "clear and unambiguous as to the Installation or Laying of the plastic pipe" since "the contract is silent on this point." Plaintiff argues that the written contract is ambiguous with respect to defendant's responsibility for installing the pipe. We think the contract on this point is vague and therefore necessitated interpretation by the court.

[2] If contract terms are ambiguous, extrinsic evidence relating to the agreement may be competent to clarify its terms. *Goodyear v. Goodyear,* 257 N.C. 374, 126 S.E. 2d 113 (1962);

*Owens v. Little,* 13 N.C. App. 484, 186 S.E. 2d 182 (1972) ; 2 Strong, N. C. Index 2d, Contracts, § 12, p. 312. Extrinsic evidence tended to show that defendant was responsible for digging the ditch in which to lay the pipe; that defendant arranged with subcontractors for the pipe installation and assumed responsibility for at least a part of the leakage repair work. Plaintiff introduced testimony tending to establish that at the time the pipe was bought it had a sales price of 65 or 70 cents per foot (not more than $8,260 for 11,800 feet) while defendant's evidence tended to establish the cost of the pipe at $1.89 per foot.

[3] It is well recognized that in a nonjury trial the findings by the court have the force and effect of a jury verdict and are conclusive on appeal if supported by any competent evidence notwithstanding that there is evidence which would sustain findings to the contrary. *Mayo v. Casualty Co.,* 282 N.C. 346, 192 S.E. 2d 828 (1972) ; *Vaughn v. Tyson,* 14 N.C. App. 548, 188 S.E. 2d 614 (1972). After considering all of the evidence the able trial judge found that defendant contracted to furnish *and install* the plastic pipe and this finding being amply supported by the evidence is conclusive on appeal.

[4] Further, it is undisputed that the controverted part of the contract was prepared by defendant. Well recognized in the law of contract construction is the principle that an ambiguity in a written contract is to be construed against the party who prepared the instrument. *Yates v. Brown,* 275 N.C. 634, 170 S.E. 2d 477 (1969) ; *Koppers Co., Inc. v. Chemical Corp.,* 9 N.C. App. 118, 175 S.E. 2d 761 (1970). We hold that the trial court did not err in concluding that the contract between plaintiff and defendant obligated defendant to furnish and install the pipe for the water system.

[5] Appellant next contends that the judge erred in awarding special damages as compensation for repair bills incurred by plaintiff. This contention has merit.

In Paragraph V of the complaint as amended, plaintiff alleged that the value of the water system for which it contracted was $33,970.32 and that the value of the system actually installed was $4,334.92. In Paragraph VI, plaintiff alleged that as a direct result of defendant's breach of contract, plaintiff sustained special damages due to its inability to sell to the public lots complete with usable water systems; that said losses

were reasonably foreseeable by defendant. In Paragraph VII, plaintiff alleged that it had sustained damages totaling $50,000.00. In its prayer for relief, plaintiff asked for judgment against defendant in the sum of $50,000 plus costs.

In *Oberholtzer v. Huffman,* 234 N.C. 399, 400, 67 S.E. 2d 263 (1951), we find: "Special damages, that is, damages which are the natural but not necessary result of the alleged wrongful act of the defendant, must be pleaded with sufficient particularity to put the defendant on notice. *Conrad v. Shuford,* 174 N.C. 719, 94 S.E. 424; *Binder v. Acceptance Corp.,* 222 N.C. 512, 23 S.E. 2d 894." See also *Perkins v. Insurance Company,* 274 N.C. 134, 161 S.E. 2d 536 (1968).

We think the $4,409.63 which plaintiff allegedly spent in its efforts to repair the water system comes within the category of special damages which must be specifically pleaded. This was not done. The record discloses that on 15 May 1972, plaintiff filed a motion pursuant to Rule 15(b) of the Rules of Civil Procedure to amend its complaint to specifically allege this item but the record fails to disclose that the motion was ever allowed. Plaintiff argues that the court by including an award of $4,409.63 in its judgment inferentially allowed the motion to amend; we are unable to accept this argument.

We have considered the other assignments of error brought forward and argued in defendant's brief but find them to be without merit.

Our decision is that the judgment awarding general damages in the net amount of $22,635.40, plus interest and costs of the action, and dismissing defendant's counterclaim, is affirmed; but that portion of the judgment awarding special damages in the amount of $4,409.63 is vacated.

Modified and affirmed.

Judges BROCK and HEDRICK concur.