575 F.2d 1091
 Garland D. GLADDEN, Appellant,
v.
PARGAS, INC. OF WALDORF, MARYLAND and Pargas, Inc. of
Wilmington, North Carolina, Appellees,
v.
The HARTFORD LIFE & ACCIDENT INSURANCE COMPANY, Third-Party Defendant.
 No. 77-1602.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 9, 1978.
Decided May 11, 1978.
 
 Kenneth A. Shanklin, Wilmington, N.C. (Rountree & Newton, William K. Rhodes, Jr., Wilmington, N.C., on brief), for appellant.
 David A. Nash, Wilmington, N.C. (Hogue, Hill, Jones, Nash & Lynch, Wilmington, N.C., on brief), for appellees.
 Before BRYAN, Senior Circuit Judge, and WINTER and HALL, Circuit Judges.
 K. K. HALL, Circuit Judge:
 
 
 1
 Plaintiff, Garland D. Gladden, brought this diversity action against Pargas, Inc. of Wilmington, North Carolina,[1] (Pargas) for payment of disability benefits allegedly due plaintiff under a wage continuation benefit program for defendant's employees. Pargas joined The Hartford Life and Accident Insurance Company (Hartford) as a third-party defendant, and thereafter, all parties moved for summary judgment. The trial court denied plaintiff's motion for summary judgment, granted defendant Pargas' motion for summary judgment on the issue of liability, and dismissed Hartford's motion for summary judgment as moot. Plaintiff appeals. We reverse in part, affirm in part, and remand with directions.
 
 I.
 FACTS[2]
 
 2
 On February 27, 1973, the plaintiff, as an employee of the defendant Pargas, enrolled for disability insurance coverage by signing a "Voluntary Enrollment Form".
 
 
 3
 On April 1, 1973, Pargas obtained group insurance from Hartford which provided long-term coverage for Pargas' employees. Prior to his disability, plaintiff had never received nor been given the opportunity to see a copy of the policy.
 
 
 4
 Also on April 1, 1973, Pargas began withholding .50% of plaintiff's monthly earnings as premium for the disability program, with .02% going to Pargas for "short-term" coverage the first six months of disability and .48% going to Hartford for long-term disability coverage under the policy.
 
 
 5
 On June 29, 1973, Pargas Employment Manual No. 2,952 was distributed to plaintiff.
 
 
 6
 On April 21, 1974, while still an employee of Pargas, plaintiff became totally disabled,[3] and upon notice, Pargas paid plaintiff, an employee with more than five years of continuous service, 100% of his basic wage for 13 weeks, and 662/3% of his basic wage for the next 13 weeks. The amount representing 662/3% of plaintiff's monthly earnings is $592.22. As of October, 1974, plaintiff was receiving an Air Force disability benefit of $230.00, later raised to $264.93, primary Social Security benefits of $289.10, later to raise to $312.80, and his family was receiving secondary Social Security benefits of $266.10.
 
 
 7
 Hartford has refused to pay anything to the plaintiff because the benefits provided under the terms of the policy are exceeded by other Income Benefits, namely the aforementioned Air Force and Social Security benefits. Pargas likewise bases refusal to pay long-term coverage on the terms of the policy.
 
 
 8
 Hartford's entire contract with the plaintiff is the policy. Not so Pargas.
 
 II.
 THE CONTRACT AND ITS TERMS
 
 9
 The completed Enrollment Form constituted a contract under North Carolina law.
 
 
 10
 North Carolina defines a contract as an agreement between two or more persons, upon sufficient consideration, to do or to refrain from doing a particular act. See, e.g., McCraw v. Llewellyn, 256 N.C. 213, 123 S.E.2d 575, 578 (1962). An offer and acceptance are essential elements of a contract, and they constitute the agreement between the parties. Yeager v. Dobbins, 252 N.C. 824, 114 S.E.2d 820, 823-24 (1960). The Enrollment Form met these requirements. It was an offer by Pargas to provide disability benefits and the plaintiff accepted with his signature, the consideration being plaintiff's continued employment and the deduction of premiums from his wages.
 
 
 11
 The terms of the Enrollment Form concerning the reduction of benefits stated:
 
 
 12
 The monthly benefit income shall be reduced by any amount available from other legislated or group wage benefit plans available to the participant.
 
 
 13
 The form does not define the term "other legislated or group wage benefit plans", and our review of the record, briefs and oral argument does not shed light on the meaning of this phrase.
 
 
 14
 In its Employee Manual, Pargas explained the disability plan and made this statement concerning reduction of benefits:All plan benefits shall be less any other benefits for which the employer makes contributions on behalf of the employee, including Social Security (primary), Workmen's Compensation or other legislated benefits.
 
 
 15
 The plaintiff is bound by this provision in the manual which clearly provides that primary Social Security and Workmen's Compensation are two types of benefits which will reduce the plaintiff's recovery under the policy. However, the ambiguity surrounding "other legislated benefits" remains,[4] and applying North Carolina rules of construction, we must resolve this ambiguity in favor of the plaintiff, the insured, and against Pargas, the drawer of the document. See, e.g., Windfield Corp. v. McCallum Inspection Co., 18 N.C.App. 168, 196 S.E.2d 607, 611 (1973). Therefore, the only benefits which clearly reduce plaintiff's recovery are primary Social Security and Workmen's Compensation, of which plaintiff receives only the former. Whether the Air Force benefits or secondary Social Security benefits come within the term "legislated benefits" is ambiguous and unclear, will be resolved in plaintiff's favor, and will not be held to reduce his recovery, unless some other clause of the Enrollment Form or Employee Manual require a different conclusion.
 
 III.
 THE MASTER POLICY
 
 16
 The Enrollment Form contained the following language:
 
 
 17
 The company may insure any or all the benefits payable under this plan and such insurer's contract provisions shall become a part of this benefit program.
 
 
 18
 The Employee Manual provided, in pertinent part:
 
 
 19
 Any inconsistency between these highlights and the provisions of any insurance policy insuring these benefits, the actual provision to the insurance contract will govern.
 
 
 20
 Relying on these two statements, Pargas argues that the terms of the master policy would preclude recovery since the policy clearly would reduce plaintiff's benefits not only by his primary Social Security, but also by the amount of his Air Force benefits and the benefits received by his family from Social Security. Plaintiff argues that Pargas is estopped to raise the terms of the master policy to reduce his recovery since they were contradictory to the terms of the Enrollment Form and the Employee Manual.
 
 
 21
 North Carolina recognizes the doctrine of equitable estoppel, White v. Moore, 11 N.C.App. 534, 181 S.E.2d 734, 736 (1971), and has many times outlined its elements as follows:
 
 
 22
 1. Misrepresentation or concealment of material facts:
 
 
 23
 2. Estopped parties' knowledge, either actual or implied, that the representations were untrue when made;
 
 
 24
 3. Lack of knowledge as to the untruth by the party raising the estoppel;
 
 
 25
 4. Estopped parties' intent or expectation that misrepresentations will be relied upon;
 
 
 26
 5. Reliance by party raising estoppel;
 
 
 27
 6. Prejudice to party raising estoppel. E.g., Yancey v. Watkins, 2 N.C.App. 672, 163 S.E.2d 625, 626-27 (1968). Actual fraud, bad faith or intent to mislead is not essential to invoke equitable estoppel, and such estoppel may result from the honest but entirely erroneous expression of opinion as to some significant legal fact. Watkins v. Central Motor Lines, Inc., 279 N.C. 132, 181 S.E.2d 588, 593 (1971).
 
 
 28
 Analyzing the elements of equitable estoppel, the statements in the Enrollment Form and Employee Manual misrepresented and were inconsistent with the terms of the master policy on which Pargas relies, and Pargas should have known that these statements misrepresented the terms of the policy. Pargas intended for plaintiff to rely on these statements in the Enrollment Form and Employment Manual, and plaintiff so relied to his detriment.
 
 
 29
 The element which Pargas most seriously contests is the plaintiff's lack of knowledge of the misrepresentation. Pargas relies on the statements in the Enrollment Form and the Employee Manual that the master policy would govern. Had plaintiff been given a copy of the contract, or had plaintiff possessed easy access to the master policy, defendant's argument might be plausible. See Fields v. Western Equipment Co., 255 Or. 615, 469 P.2d 779 (1970). However, in this case, plaintiff was not given a copy of the policy until after he became disabled, nor did he have easy access thereto.[5] Under these circumstances, we hold that plaintiff did not have knowledge that the representations made on the Enrollment Form and the Employee Manual were inconsistent with the policy, and that Pargas is estopped to raise the contradictory terms of the master policy to defeat benefits recoverable under the Enrollment Form as explained in the Employee Manual.[6]
 
 
 30
 Plaintiff was entitled to rely on the statements made by Pargas in the Enrollment Form and Employee Manual, and Pargas is responsible for the benefits outlined therein, with reduction only for primary Social Security benefits which plaintiff receives. However, this does not mean that plaintiff can look to Hartford for recovery. Pargas is the party who made the misrepresentations and against whom the estoppel applies. Hartford's denial of benefits was consistent with its contract and it is not to be held liable for the misrepresentations of Pargas to its own employees.
 
 IV.
 CONCLUSION
 
 31
 Recognizing that defendant Pargas admitted disability only for the purposes of the motions for summary judgment, the judgment of the district court is reversed and the case is remanded for further consideration consistent with this opinion.
 
 
 32
 REVERSED AND REMANDED WITH DIRECTIONS.
 
 
 33
 ALBERT V. BRYAN, Senior Circuit Judge, dissenting:
 
 
 34
 Not for a moment unmindful of its telling and lucid reasoning, still to me the majority opinion is mistaken in its conclusion that the statements contained in the Voluntary Enrollment Form were so ambiguous or inconsistent as to constitute misrepresentation to the plaintiff of what reductions would be made from the disability payments provided by the insurance program.I.
 
 
 35
 Under the plan as outlined in the Enrollment Form, the plaintiff would receive $592.22 in monthly benefits subject to the condition that:
 
 
 36
 "The monthly benefit income shall be reduced by any amount available from other legislated or group wage benefit plans available to the participant".
 
 
 37
 The word "legislated" is defined, with its use illustrated, by eminent lexicographers in this way: VI. The Oxford English Dictionary: legislate is "to make or enact laws"; "legislated", an adjective, is exampled as "legislated instruction" or "The legislated depreciation of this one . . . had cost him . . . not less than 120,000". The "other" in the same sentence of the proviso is to be read as modifying both "legislated" and "group"; this is just ordinary syntax.
 
 
 38
 To me there is nothing cryptic in the definition. Further, the objects to which it is here applied manifest in themselves its intendment: Air Force disability payments of $230.00, Social Security (primary) of $289.10 and $266.10 Social Security (secondary), a total of $785.20 monthly. Surely the geneses of Air Force disability payments and Social Security installments must be conceded as statutory, that is, born of legislation. Vide e.g.: Air Force Retirement Act, 10 U.S.C. § 8883 et seq. and Social Security Act, 42 U.S.C. § 301 et seq.
 
 II.
 
 39
 The majority seemingly also question particularly whether the secondary (the dependents') Social Security benefits come within the reductions described in the Enrollment Form. For this, the opinion argues that the Employee Manual does not expressly include the "secondary" as a reduction. Plaintiff can hardly be heard to say now that he relied on the Manual in entering into the insurance plan. As the opinion recognizes, the Manual was not distributed until June 29, 1973, the plaintiff having enrolled on February 27, 1973, commenced regular contributions to the plan on April 1.
 
 
 40
 In any event, if the Manual is to be looked to then the "insuror contract" the Hartford policy of insurance anticipated in the Enrollment Form must be noticed, for the Form stipulates that the policy "provisions shall become a part of this benefit plan". These provisions, referring to the reductions as "Other Income Benefits", name them as follows:
 
 
 41
 "(c) Disability retirement, or unemployment benefits provided for under any law of a government.*
 
 
 42
 "Benefits provided under the Federal Social Security Act shall include benefits to which the Insured Person's dependents are entitled by reason of the Insured Person's disability or retirement."
 
 
 43
 (Accent added.)
 
 
 44
 Finally, the Manual declares of itself: "Any inconsistency between these highlights and the provisions of any insurance policy insuring these benefits, the actual provisions of the insurance contract will govern".
 
 
 45
 It does not suffice to urge that plaintiff did not know of the contract of insurance or that it was not available to him. No suggestion is offered that the master policy which was kept in the company's office was ever withheld from the insured. More importantly, plaintiff apparently supervised the enrollments and certified to their authenticity. The enrollment form he used, as already observed, contained a plain and direct notification to the plaintiff of the policy as well as its terms. Attention was called, on the front of the one-page form, to the "limitation of benefits". No ground appears for doubting plaintiff's thorough comprehension of the disability coverage and reductions.
 
 
 46
 As I perceive no imposition upon him, I would affirm the District Court in dismissing plaintiff's claim.
 
 
 
 [1]
 Pargas, Inc., of Waldorf, Maryland, was also a party to this suit, but was dismissed for lack of personal jurisdiction. This dismissal has not been appealed
 
 
 [2]
 The facts established by the pleadings, stipulations, affidavits and documents submitted by the parties are not in dispute
 
 
 [3]
 Pargas admitted disability arguendo for the purposes of the motions for summary judgment
 
 
 [4]
 For instance, does the term "other legislated benefits", as found in the Employee Manual, or "other legislated and group wage benefit plans", as found in the Enrollment Form mean that the instant plan is a legislated plan? Does "legislated" in the Enrollment Form relate to "wage benefit plan", or just to "plan"? Also, a clause in the Employee Manual refers to "other benefits for which the employer makes contributions." Is the United States Air Force an "employer" and does it make "contributions"? Our review of the record, briefs and arguments does not render clarifying answers to these and many other questions about the language to be construed
 
 
 [5]
 During oral argument, counsel for the plaintiff stated that the master policy was not even kept at the plaintiff's place of work, Wilmington, North Carolina, but was kept in Pargas' corporate headquarters in Waldorf, Maryland. Counsel for Pargas did not admit this fact, but did state that it was normal for a corporation to keep the policy and not make copies available to employees. Regardless of where the policy was kept, when the employer does not make the policy or a copy thereof available to its employees, the duty not to misstate the terms thereof is elevated
 
 
 [6]
 We believe that the district court's holding that the doctrine of estoppel would not apply against Pargas is incorrect and based on inapplicable authority. The district court relied on Hunter v. Jefferson Standard Life Insurance Company, 241 N.C. 593, 86 S.E.2d 78 (1955) and Currie v. Occidental Life, 17 N.C.App. 458, 194 S.E.2d 642 (1973) which were cases involving only the insured and insurer, where the insured had a copy of the policy, and where the insured attempted to apply the doctrine of waiver to enlarge the liability of the insurer. The facts of the instant case render the cited cases inapposite, since here the employer is imposed as a third party, since the plaintiff did not receive or have easy access to a copy of the policy, and since plaintiff does not attempt to enlarge the terms of his contract with the employer
 
 
 *
 Incidentally, this terminology confirms the definition in this dissent for the word "legislated"