**PERMANENCE CORPORATION,**
**Plaintiff–Appellant,**

v.

**KENNAMETAL, INC.,**
**Defendant–Appellee.**

No. 89–1872.

United States Court of Appeals,
Sixth Circuit.

Argued June 5, 1990.

Decided July 19, 1990.

Robert H. Golden, Armand D. Kunz, Golden & Kunz, Southfield, Mich., Ronald C. Winiemko (argued), Rochester, Mich., for plaintiff-appellant.

Ernie L. Brooks (argued), Brooks & Kushman, Southfield, Mich., for defendant-appellee.

Before KRUPANSKY and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Plaintiff-appellant, Permanence Corp., appeals the district court's grant of summary judgment to defendant-appellee, Kennametal, Inc., holding that defendant did not have an implied best efforts obligation in the contract between Permanence and Kennametal. 725 F.Supp. 907. For the following reasons, we affirm.

I.

Permanence is a closely-held Michigan corporation, which was formed by its president and majority shareholder Charles S. Baum in 1969 for the purpose of developing and exploiting certain processes developed by Baum. In the 1970s Permanence conducted research and manufactured products in the tungsten carbide field. On May 24, 1977, Permanence obtained U.S. Patent No. 4,024,902 (hereinafter "Patent 902") for a process to form an alloy by incorporating tungsten carbide into a steel matrix. The patent was entitled "metal sintered tungsten carbide composites and method of forming the same."

On December 8, 1977, plaintiff executed a non-exclusive license agreement for the use of Patent 902 to Masco Corp., a Detroit corporation. The agreement included a plan of reorganization and plan of merger between Masco and Permanence, an employment agreement concerning Baum, and an agreement not to compete concerning Baum. The agreement also contained a clause providing for its termination. The patented process was not developed by Masco and Masco chose to terminate the agreement pursuant to the contract clause, but retained its non-exclusive license to use Patent 902.

On September 19, 1979, Permanence sued Masco, claiming that Masco failed to fulfill an implied obligation to use best efforts to exploit the patent. The Michigan trial court found that Masco had no implied obligation to use best efforts as the contract for the non-exclusive right to use the patent was adequately supported by consideration in the form of the employment contract given by Masco to Mr. Baum. The Michigan Court of Appeals affirmed. *Permanence Corp. v. Masco Corp.*, No. 65585, Slip Op. at 4 (Mich.Ct.App. Oct. 4, 1983).

On February 8, 1979, Permanence executed a written agreement with defendant Kennametal, a publicly traded corporation specializing in the manufacture of tools, tooling systems, and supplies for the metal working industry. Kennametal's principal office is in Latrobe, Pennsylvania.

In the contract between the parties, Permanence granted Kennametal the non-exclusive right to the licensed patents (existing Patent 902 and patents that would issue from applications owned by Permanence)[1] for a period of 24 months subject to the non-exclusive license previously granted to Masco Corp. for Patent 902. For the non-exclusive license, Kennametal agreed to pay Permanence a consideration of a $150,000 fee and a royalty rate of 2¾% on the net sales price of products made by Kennametal using processes that fell under valid claims of the licensed patents. Ad-

vance royalties of $100,000 were to be paid upon the signing of the agreement for the non-exclusive license.

The agreement also provided that Kennametal would have the option to obtain the exclusive license to the patents, subject to the non-exclusive license previously granted to Masco, exercisable within 24 months from the date of the agreement. If after 24 months, the option was not exercised, Kennametal agreed to pay a royalty rate of 3½% except on products sold by Kennametal in direct competition with products manufactured under Masco's non-exclusive license. The royalty rate for competing products was 2%.

Kennametal agreed to pay Permanence a second $150,000 fee and a second $100,000 in advance royalties upon the exercise of the option for an exclusive license. Under the exclusive agreement, the royalty rate was 3½% with the exception of a 2% rate on products sold in direct competition with Masco products manufactured under its non-exclusive license.

On February 8, 1979, the parties signed the agreement and a $150,000 up-front fee and an advance payment of royalties in the amount of $100,000 was paid to Permanence for the non-exclusive right to the patents. On February 5, 1981, Kennametal exercised its option and paid an additional $250,000 for the grant of the exclusive agency—$150,000 for the exercise of the option and a second $100,000 in advance royalties.

Seven years later on April 18, 1988, Permanence filed a one-count complaint alleging that Kennametal had breached the contract by not fulfilling an obligation to use best efforts to exploit the patents. As there was no express "best efforts" provision in the contract, plaintiff argued that the grant of an exclusive agency imposes on the licensee (Kennametal) an implied duty to use best efforts to exploit. On February 1, 1989, Kennametal moved for summary judgment, arguing that it had spent $500,000 for the use of the patented

---

**1.** In February and March 1979, Permanence also obtained related U.S. Patents Nos. 4,140,170 and 4,146,080.

technology of Permanence and that a best efforts obligation had specifically been negotiated out of the agreement.

On May 18, 1989, the district court granted defendant's motion for summary judgment, holding that no obligation on defendant's part to use its best efforts to exploit the patents could be implied in the parties' contract. Plaintiff timely filed this appeal.

## II.

The sole issue before this court on appeal is whether the district court erred in its order granting summary judgment that as a matter of law an implied best efforts obligation did not arise in the contract between the parties. When an appeals court reviews the grant of summary judgment below, the district court's legal conclusions are reviewed de novo. *Pinney Dock and Transport Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1472 (6th Cir.), *cert. denied*, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988). Federal district courts sitting in diversity cases must apply the law of the appropriate state as declared by the legislature or highest court of the state. *Erie R.R. Co. v. Tomkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In the present case the contract at issue states that the agreement is to be interpreted under the law of Pennsylvania and the parties are therefore agreed that Pennsylvania law applies.

Plaintiff's legal theory that the court will imply a duty on the part of an exclusive licensee to use "best efforts"[2] to bring profits and revenues into existence finds its ultimate support in the landmark opinion of Judge Cardozo, *Wood v. Lucy, Lady Duff-Gordon*, 222 N.Y. 88, 118 N.E. 214 (1917). There, the defendant, a fashion designer, gave the plaintiff the exclusive privilege of marketing defendant's designs. The court implied an obligation to exploit the design,

although there was not an express obligation to do so in the contract, because defendant's sole revenue from the grant of the exclusive agency was to be derived from plaintiff's sale of clothes designed by defendant, and defendant was thus at plaintiff's mercy. 118 N.E. at 215. In subsequent cases, an obligation to employ best efforts has generally been implied in contracts in which the only consideration for a grant of property lies in payment of royalties. *Post Mach. Co., Inc. v. Tanges*, 705 F.Supp. 55, 58 (D.N.H.1989).

In *Maxwell v. Schaefer*, 381 Pa. 13, 112 A.2d 69 (1955), the Pennsylvania Supreme Court stated that since plaintiff's profits for granting the exclusive contract depended entirely on the volume of sales defendant was able to create for the product, "it may fairly be inferred that all parties to the agreement fully intended and expected [defendant] to devote reasonable effort to the promotion of [the product]." *Id.* 112 A.2d at 72, citing *Wood v. Lucy, Lady Duff-Gordon*, 222 N.Y. at 90–91, 118 N.E. 214. Thus, under Pennsylvania law an obligation to use "best efforts" will be implied in a contract granting an exclusive agency if the plaintiff depends for its consideration solely upon sales of the licensed product.

In cases such as *Wood* and *Maxwell*, courts have found it necessary to imply a covenant to employ best efforts as a matter of law because otherwise the contract at issue would lack mutuality of obligation and be inequitable. *Eastern Elec., Inc. v. Seeburg Corp.*, 427 F.2d 23, 25 (2nd Cir. 1970); *Kardios Systems Corp. v. Perkin–Elmer Corp.*, 645 F.Supp. 506, 509 (D.Md. 1986). It would be inherently "unfair to place the productiveness of the licensed property solely within the control of the licensee, thereby putting the licensor at his mercy, without imposing [a reciprocal] obli-

---

**2.** While the phrase "best efforts" is often used to describe the extent of the implied undertaking, this has properly been termed an "extravagant" phrase. *Perma Research and Dev. v. Singer Co.*, 542 F.2d 111, 118 (2nd Cir.) (Van Graafeiland, J., dissenting), *cert. denied*, 429 U.S. 987, 97 S.Ct. 507, 50 L.Ed.2d 598 (1976). A more accurate description of the obligation owed would be the

exercise of "due diligence" or "reasonable efforts." *Vacuum Concrete Corp. v. American Mach. & Foundry Co.*, 321 F.Supp. 771, 775 (S.D.N.Y.1971). An implied best efforts obligation is distinct from an implied covenant of good faith performance and fair dealing, which every contract contains. UCC § 1–203.

gation upon the licensee." *Vacuum Concrete Corp. v. American Mach. & Foundry Co.*, 321 F.Supp. 771, 773 (S.D.N.Y. 1971).

The issue before this court is thus whether an implied covenant to use best efforts is necessary to establish mutuality of obligation in the present case. The existence of a best efforts obligation should not be lightly inferred since "such an obligation subjects the licensee to significant litigation exposure and deprives him of the fundamental power of determining for himself the reasonableness of his marketing efforts." *Kardios Systems Corp.*, 645 F.Supp. at 509. Where it is unnecessary to imply such an obligation in order to give effect to the terms of the contract, the obligation will not be implied. *Willis Bros., Inc. v. Ocean Scallops, Inc.*, 356 F.Supp. 1151, 1155 (E.D.N.C.1972).

In making the determination of whether a covenant to use best efforts should be implied as a matter of law, this court must focus its attention on the terms of the written contract between the parties, *Vacuum Concrete Corp.*, 321 F.Supp. at 773, and the circumstances surrounding the making of the agreement, *Willis Bros., Inc.*, 356 F.Supp. at 1156.

Plaintiff argues that in order to give effect to the meaning of the contract a best efforts obligation must be implied because the contract provides for royalties to be paid to Permanence by Kennametal on products produced by the processes of the licensed patents to which Kennametal had exclusive rights. Plaintiff argues that the district court erred in determining that Permanence had received sufficient consideration, $500,000, in exchange for its rights to the patents, because $250,000 of the money paid by Kennametal was for the grant of the non-exclusive license.[3] Plaintiff contends that in spite of the additional $150,000 paid for the exercise of the option to obtain exclusive rights to the patents and the second payment of $100,000 in advance royalties, a best efforts obligation must be implied because the contract contemplates the payment of royalties and royalties un-

der an exclusive agency will be generated only if defendant is under a duty to exploit the patented processes. Plaintiff contends that because of the grant of an exclusive, rather than non-exclusive, right to the patented processes, plaintiff bargained for and received an increase in the rate of royalty from 2¾% to 3½%.

First, plaintiff's argument that it received an increase in royalty rate as consideration for the grant of the exclusive, as opposed to non-exclusive, license is negated by the terms of the contract. Paragraph 5.2 of the contract stated that if the option was not exercised within 24 months and Kennametal chose instead to continue the non-exclusive license, the royalty rate would increase from 2¾% to 3½%. This rate—3½%—was the same rate which was negotiated as the royalty rate to be paid under the exclusive license. Thus, contrary to plaintiff's assertions, no increase in the rate of royalty was granted for the right to use the patents exclusively after 24 months. This fact bolsters defendant's argument that the consideration given for the exclusive, as opposed to the non-exclusive, right to the patented processes was the $150,000 fee paid up front for the exercise of the option and the additional $100,000 paid in advance royalties under the exclusive license.

Plaintiff concedes that there was no best efforts obligation to exploit the non-exclusive license initially granted to Kennametal for a $150,000 fee and $100,000 in advance royalties. Yet royalties (2¾%) were also to be paid on products manufactured under the non-exclusive license. Moreover, the royalty rate for both the exclusive license and the non-exclusive license after 24 months was contingent on whether the products manufactured by Kennametal under the patents were ones which directly competed with products sold by Masco that had been produced under the non-exclusive license previously granted to it. The fact that the relationship with Masco subsequently proved to be unproductive and did not generate royalties for Permanence does

---

**3.** We agree that $250,000 is the amount paid for    the grant of the exclusive license.

not justify imposing an implied covenant to exploit on Kennametal.

The key provisions of the contract between Permanence and Kennametal which militate against implying a covenant to use best efforts are Kennametal's obligation to pay $150,000 in order to exercise the option for the exclusive license and the $100,000 in additional advance royalties paid under the exclusive license. Courts have held that by imposing a substantial minimum or advance royalty payment, the licensor, in lieu of obtaining an express agreement to use best efforts, has protected himself against the possibility that the licensee will do nothing. Rather than leaving the licensor at the mercy of the licensee, the demand for a substantial up-front or advance royalty payment creates an incentive for the licensee to exploit the invention or patent. *See HML Corp. v. General Foods Corp.*, 365 F.2d 77, 80–81 (3d Cir.1966) (seller is not at mercy of buyer when terms of the contract provide a substantial advance payment of $250,000, negating implication of duty to use best efforts drawn from equitable considerations); *Kardios Systems Corp.*, 645 F.Supp. at 509 ($60,000 received upon execution of agreement, and additional $134,000 in consulting fees was significant payment creating mutuality of obligation independent of royalty payments); *Vacuum Concrete Corp.*, 321 F.Supp. at 773–74 (minimum royalty of $25,000 per year for the first two years of the contract assured Vacuum of an amount equal to 10% royalties on at least $250,000 of sales annually). In the present case, Permanence received a substantial total advance payment of $250,000 for its right to the exclusive license and, unlike the licensor in the majority of cases where a duty to exploit has been implied, did not depend for its consideration solely on Kennametal's sale of products developed under the patents.

Although the advance royalty clause and up-front payment alone might not preclude the finding of an implied obligation to exploit, *id.* at 773–74, these provisions of the contract must be considered with the other express provisions already discussed. Moreover, the contract contained a merger or integration clause. By emphasizing that the formal contract, which contained no express agreement by Kennametal to "exploit" the patents, constituted the entire agreement between the parties, this clause further negates the implication that a duty to use best efforts was assumed.

In most of the cases on which plaintiff relies, including the seminal *Wood v. Lucy, Lady Duff-Gordon*, no advance payments were made and the licensor had to rely entirely on the good faith of the licensee in order to receive any consideration in return for the grant of the exclusive agency. *See Bailey v. Chattem, Inc.*, 684 F.2d 386, 388, 396 (6th Cir.1982) (best efforts to commercialize invention implied in contract because the only consideration received in exchange for rights to invention was a promise of a 1% royalty on any sales of products made under the patent); *In re Waterson, Berlin & Snyder Co.*, 48 F.2d 704, 711 (2d Cir. 1931) (right to rescind the contract because of breach of implied obligation to work the copyrights); *Willis Bros., Inc.*, 356 F.Supp. at 1156–57 (because prepayment of loan given to licensor was dependent on applying the royalties generated under the license to the principal on the loan, a best efforts obligation was imposed); *Havel v. Kelsey-Hayes Co.*, 83 A.D.2d 380, 445 N.Y. S.2d 333, 336 (1981) (minimum royalty payment not guaranteed so best efforts obligation necessary to provide consideration for exclusive licensing agreement). These cases are therefore distinguishable from the present case in which Permanence received a total of $250,000 for Kennametal's exclusive use of its patents, subject to Masco's non-exclusive use of Patent 902.

Plaintiff relies on two cases, *Perma Research and Dev. v. Singer Co.*, 542 F.2d 111 (2d Cir.), *cert. denied*, 429 U.S. 987, 97 S.Ct. 507, 50 L.Ed.2d 598 (1976) and *Dwight & Lloyd Sintering Co. v. American Ore Reclamation Co.*, 44 F.Supp. 391 (S.D.N.Y. 1937), in which the courts implied a covenant to employ best efforts despite the payment of other consideration for the grant of the exclusive agency. We believe that these cases have misapplied the doctrine first articulated in *Wood v. Lucy, Lady Duff-Gordon* where it was necessary

to imply "best efforts" in order to provide mutuality of obligation to save the agreement. In *Wood*, the court stated:

> [Defendant's] *sole* compensation for the grant of an exclusive agency is to be one-half of all the profits resulting from the plaintiff's efforts. *Unless he gave his efforts, she could never get anything.* Without an implied promise, the transaction cannot have such business "efficacy, as both parties must have intended that at all events it should have."

118 N.E. at 214–15 (emphasis added) (citation omitted). It is not necessary for a court to interject a covenant to employ best efforts, a doctrine developed in the context of lack of mutuality of obligation, into every contract in which there is a grant of an exclusive agency. Especially, as is true in the present case, when an inventor grants a license to patented technology, the application of which is unknown, a commitment on the part of the licensee to devote best efforts to the development of the technology is a substantial commitment which should not be automatically inferred.

In the present case, we do not believe that Kennametal impliedly promised to perfect an incompletely developed technology, which is what plaintiff, in effect, asserts. The total payment of $250,000 for the exclusive license to the patents provided sufficient incentive and demonstration of good faith that Kennametal would attempt to commercialize and market the Permanence process. This is not a case where the licensor (Permanence) depended for its sole compensation for the licensed patents upon royalties generated by the exclusive agency granted to Kennametal. The implication of a best efforts obligation is therefore not necessary to establish mutuality of obligation. Moreover, we find that if Permanence wished to bind Kennametal to a best efforts commitment in the circumstances of the present case, it was incumbent upon Permanence to spell out this obligation in the formal written agreement. For these reasons, the decision of the district court is affirmed.