EMERSON RADIO CORP., Plaintiff,

v.

ORION SALES, INC., et al., Defendants.

Civil Action No. 95–6455.

United States District Court,
D. New Jersey.

March 26, 1999.

Paul F. Carvelli, McCusker, Anselmi, Rosen, Carvelli & Walsh, Chatham, NJ, for plaintiff.

Joseph J. Fleischman, Norris, McLaughlin & Marcus, Somerville, NJ, for defendants.

### OPINION

WOLIN, District Judge.

This matter comes before the Court on a motion for partial summary judgment filed by defendant Orion Sales, Inc. ("Orion"). The Court has decided the matter pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons stated

herein. the Court will grant defendant's motion for partial summary judgment.

## BACKGROUND

On or about February 22, 1995, plaintiff Emerson Radio Corp. ("Emerson") entered into a licensing agreement (the "license") with Orion, regarding sales of Emerson trademark goods to Wal–Mart Stores, Inc. *See* Declaration of Jeffrey H. Daichman (the "Daichman Decl."), Exh. C. Pursuant to the license, Emerson granted Orion a three-year "exclusive . . . nontransferable license to utilize and exploit" the Emerson trademark "in connection with the manufacturing, sale, marketing, and distribution" of certain specified video and television products. *See id.,* Exh. C, §§ 2.1, 3.1. The license does not specify a minimum sales requirement to be met by Orion, and does not include any express provision that Orion use "best efforts" or "due diligence" in marketing or selling goods under the license. The license does, however, require that Orion pay a minimum annual royalty of $4 million to Emerson. *See id.,* Exh. C, § 5.1.

On December 20, 1995, Emerson filed the complaint in this action against defendants Orion, Otake Trading Co. Ltd., Technos Development Limited, Shigemasa Otake and John Richard Bond. Mr. Otake is alleged to own and/or control the three corporate defendants. *See* Complaint, ¶ 11. Mr. Bond is alleged to be a former executive of Emerson, later hired by Mr. Otake. *See id.,* ¶ 17.

In its complaint, Emerson asserts the following causes of action against the defendants: in the first count, breach of contract for failing to accept product returns, failing to exploit privileges granted under the license, failing to provide price decreases, and failing to permit plaintiff to inspect books and records; in the second count, breach of the implied covenant of good faith and fair dealing; in the third count, unfair competition; in the fourth count, tortious interference with contractual relations and prospective economic gain; and in the fifth count, conspiracy to interfere with and harm plaintiff's business relations. *See id.,* ¶¶ 48–52, 55–57, 59–61, 63–66, 68–70.

Orion has moved for partial summary judgment "on Emerson's claim that Orion failed to exploit the privileges granted to it as licensee." *See* Orion moving brief at 1. Orion seeks a finding by this Court that Orion had no express or implied duty under the license to sell a minimum quantity of Emerson products to Wal–Mart.[1] *See id.* at 6. Emerson argues in opposition that the license's grant to Orion of the opportunity to "exploit" Emerson trademark goods constituted an express requirement that Orion "employ [the license] to the greatest possible advantage." *See* Emerson brief at 31. Emerson also asserts that "in furtherance of the affirmative obligations imposed on Orion by the express terms of the License Agreement, a 'best efforts' requirement should be implied [sic] in the License Agreement." *See id.* at 36.

## DISCUSSION

### Summary Judgment

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the burden of demonstrating that there is no genuine issue as to any material fact. *See Celotex*

---

1. Although Emerson asserts that Orion's motion is more accurately viewed as a request for a declaratory judgment rather than a motion for summary judgment, the Court will treat Orion's application as a motion for summary judgment on the second claim included in the first count of Emerson's complaint; that is, Emerson's allegation that Orion "failed to exploit the privileges granted under the License Agreement as required under applicable law." *See* Complaint, ¶ 49.

*Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Where a summary judgment motion is properly made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). If the adverse party fails to respond with a showing that there is a genuine issue for trial, "summary judgment, if appropriate, shall be entered against the adverse party." *Id.* In making this determination, the Court must draw all reasonable inferences in favor of the non-moving party. *See National State Bank v. Federal Reserve Bank,* 979 F.2d 1579, 1581 (3d Cir.1992).

The Court's function at the summary judgment stage of litigation is to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of material fact is genuine if the evidence would permit a reasonable jury to return a verdict for the non-moving party. *See id., Coolspring Stone Supply, Inc. v. American States Life Ins. Co.,* 10 F.3d 144, 148 (3d Cir.1993). Absent evidence sufficient to permit a jury to return a verdict for the non-moving party, there is no issue for trial, and summary judgment must be granted. *See Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

**Applicable State Law**

In its briefs, Orion does not address the issue of which state's substantive law should govern this contractual dispute. Emerson relies upon a finding by a district judge, made in a related case pending in Indiana, that New Jersey law should apply. *See* Declaration of Paul F. Carvelli, Esq., Exh. A ("Findings of Undisputed

Facts and Conclusions of Law on the Parties' Cross–Motions for Partial Summary Judgment," entered December 11, 1998, by District Judge Richard L. Young of the United States District Court for the Southern District of Indiana). This Court concurs with Judge Young's reasoning and agrees that New Jersey substantive law should be applied in this case.

**Express Sales Obligations Under the License**

Emerson concedes that the license did not include a minimum sales requirement. **See** Emerson brief at 31. Rather, Emerson argues that the use of the word "exploit" in the license, required Orion to "'employ [the license] to the greatest possible advantage.'" *See id.* (quoting dictionary definition of "exploit"). Emerson asserts that the use of the word "exploit," together with certain other "express" terms of the license, "confers upon Orion an *obligation* to market, manufacture, sell, and distribute Emerson product." *See id.* at 32–33 (emphasis added).

Emerson cites no law in support of this argument. In fact, the dictionary definition of "exploit" that constitutes the sole basis for Emerson's argument could as easily be used to support an opposite interpretation of the contract. The license authorized Orion to "exploit" the Emerson trademark, but did not specify whether the exploitation should result in "the greatest possible advantage" to Emerson, or to Orion. Furthermore, the second definition of "exploit" is "to make use of ... selfishly." *See* Webster's II New Riverside Dictionary (1984) at 455. Thus, the use of the word "exploit" in the license could as easily be interpreted as granting Orion authority to act in its own self-interest as imposing a duty to act in Emerson's best interests.

Orion did have certain express duties under the license.[2] Because the use of the

2. *See, e.g.,* the requirement that Orion *"shall* take all action necessary or desirable to ensure that the manner of sale and distribution of [the Emerson trademark goods] shall in no

manner reflect adversely upon the good name or goodwill of [Emerson or the Emerson trademark]." *See* Daichman Decl., Exh. C, § 4.3 (emphasis added).

word "exploit" is inconclusive, however, the Court declines to interpret the use of that word as the imposition of an express duty on the part of Orion to exert some minimum level of effort or performance under the license.

## Implied Best Efforts Clause

■ Courts have long read into exclusive licenses an implied duty on the part of the licensee to "use reasonable efforts to bring profits and revenues into existence." *Wood v. Lucy, Lady Duff-Gordon,* 222 N.Y. 88, 91, 118 N.E. 214 (1917); *see also HML Corp. v. General Foods Corp.,* 365 F.2d 77, 80 (3d Cir.1966). Under an exclusive license, the licensor is completely reliant on the licensee's efforts in order to obtain the benefits bargained for in the contract. In order to give the license efficacy, therefore, an implied obligation is imposed on the licensee. *See Wood,* 222 N.Y. at 91–92, 118 N.E. 214; *Fenning v. American Type Founders, Inc.,* 33 N.J.Super. 167, 175, 109 A.2d 689 (App.Div.1954), *certif. denied,* 21 N.J. 469, 122 A.2d 528 (1956). This obligation has been variously characterized as an implied "covenant to exploit," "best efforts clause," or "due diligence requirement," among other terms. *See, e.g., Vacuum Concrete Corp. v. American Mach. & Foundry Co.,* 321 F.Supp. 771, 774 (S.D.N.Y.1971).

Certain licenses, however, may confer benefits on the licensor outside the royalties or revenues obtained as a result of the efforts of the licensee. For instance, a license may provide for an up-front payment from licensee to licensor, an advance payment on future royalties, or a minimum annual royalty payment. Courts have recognized that through such provisions, "the licensor, in lieu of obtaining an express agreement to use best efforts, has protected himself against the possibility that the licensee will do nothing." *Permanence Corp. v. Kennametal, Inc.,* 908 F.2d 98, 102 (6th Cir.1990); *see also Beraha v. Baxter Health Care Corp.,* 956 F.2d 1436, 1442 (7th Cir.1992) (finding the *Permanence* reasoning "persuasive"). The inclusion of

such alternate or additional non-contingent payment provisions is a factor that "militate[s] against the implication of an obligation to use due diligence to exploit the product in question." *Bellows v. E.R. Squibb & Sons, Inc.,* 184 U.S.P.Q. 473, 474 (N.D.Ill.1974) (applying New Jersey law).

■ The particular question of law before the Court is whether, under New Jersey law, a licensee is subject to an implied covenant to use best efforts to exploit a license where the license contains no explicit sales requirement but does provide for a minimum annual royalty payment to the licensor. Unfortunately, the parties have not cited to, and the Court has been unable to locate, any New Jersey cases that are specifically on point. The most pertinent cases available appear to be *Bellows* and *Fenning,* both cited above.

In *Bellows,* an Illinois district court applied New Jersey law to determine whether, as a matter of law, a licensee was under an implied obligation to · "exercise reasonable efforts and due diligence" to exploit a patent under an exclusive license. *See Bellows,* 184 U.S.P.Q. at 473. The court held that such an obligation was not implied where the license provided for an advance royalty payment and a minimum annual royalty and also specifically alluded to the licensor's remedies if the licensee "elect[ed] not to exploit the license granted hereunder." *See id.* at 474. The court concluded that these provisions, considered together, precluded the existence of an implied best efforts covenant. *See id.*

*Fenning,* on the other hand, involved an exclusive license that contained no minimum royalty provisions. *See Fenning,* 33 N.J.Super. at 171, 109 A.2d 689. The licensor alleged that the licensee had breached an implied obligation to "exercise reasonable efforts and due diligence in the exploitation and sale of devices" pursuant to the license. *Id.* at 175, 109 A.2d 689. The court concluded that such an implied duty did exist, arising from fairness and public policy concerns, reasoning that "if

we presume the parties intended a fair contract where the evident purpose of the license was exploitation, an implied covenant of reasonable exploitation is essential." *Id.* at 178, 109 A.2d 689.[3]

Neither *Bellows* nor *Fenning* is directly applicable to the instant matter. In *Bellows*, the court seemed most persuaded by the fact that the license expressly contemplated the possibility of the licensee failing to exercise its rights under the license. *See Bellows*, 184 U.S.P.Q. at 473 (noting that the license "explicitly recognizes that [the licensee] might elect not to exploit the device."). No such provision is contained in the license at issue here. The license in *Fenning*, on the other hand, did not require a minimum royalty payment, as the Emerson–Orion license did. *See Fenning*, 33 N.J.Super. at 178, 109 A.2d 689.

As noted above, several courts have recognized that the inclusion of a minimum royalty provision in an exclusive license defeats the rationale underlying the implication of a best efforts clause. The licensor's entitlement to consideration that is not contingent on the efforts of the licensee serves to counteract the rationale behind the equitable doctrine developed in *Wood* and its progeny. The *Wood* approach of inferring an implied duty to use best efforts is justified only when the licensor's consideration is *entirely* contingent on the licensee's efforts.

Although the two available cases applying New Jersey law are not directly applicable, after evaluating those cases and other relevant case law, the Court has concluded that, under New Jersey law, an exclusive license providing for a substantial minimum royalty payment is not subject to an implied best efforts covenant. The Court is persuaded that the rationale for imposing an implied duty to exercise

best efforts is offset by the existence of substantial non-contingent consideration, which provides the licensor with some assurance of benefit arising from the license independent of the efforts of the licensee.

The Court notes that Emerson has failed to document a single instance in which a court recognized an implied obligation to use best efforts in an exclusive license that required a minimum annual royalty payment. On the other hand, in the cases available to the Court that do address this specific situation, courts have declined to find such an implied obligation. *See, e.g., Permanence* and *Beraha*, cited *supra*.

In this case, Emerson was assured of an annual payment of $4 million, regardless of what level of diligence Orion applied in promoting the Emerson trademark goods. The Court finds that a required annual payment of this magnitude constitutes sufficient non-contingent consideration such that the equitable purposes served by inferring a best efforts clause are not implicated in this situation.

This holding is limited to a finding that the license did not subject Orion to an express or implied obligation to use best efforts under the license. The sole ramification of this ruling is that Orion cannot be held liable for breach of contract on the grounds that it failed to comply with a duty to use best efforts to market and sell Emerson products. The Court has made no determination regarding the other grounds for Emerson's breach of contract claim, and also has not considered the remaining four counts of the complaint that assert other causes of action.

### Implied Covenant of Good Faith and Fair Dealing

In particular, the Court notes that Emerson's allegations of fact regarding Or-

---

**3.** In a perplexing aside, the court noted without further explanation: "Though no minimum royalty is involved, this is not inconsistent with a duty to use reasonable diligence in exploitation." *Fenning*, 33 N.J.Super. at 178, 109 A.2d 689. This statement suggests that, in the court's view, a duty to use reasonable diligence would certainly be implied in a license in which a minimum royalty *was* required. Such a conclusion is counterintuitive, or, at the least, counter to the rationale of the majority of courts that have addressed this particular issue. *See Permanence* and *Beraha*, cited *supra*.

ion's efforts (or lack thereof) to market and sell Emerson trademark products may be relevant to Emerson's claim that Orion breached the implied covenant of good faith and fair dealing.

■ New Jersey law is well settled that every contract contains an implied covenant of good faith and fair dealing. *See Sons of Thunder, Inc. v. Borden, Inc.,* 148 N.J. 396, 420, 690 A.2d 575 (1997). Included in every contract is "an implied covenant that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract....'" *Palisades Properties, Inc. v. Brunetti,* 44 N.J. 117, 130, 207 A.2d 522, (1965) (quoting 5 Samuel Williston & Walter H.E. Jaeger, *A Treatise on the Law of Contracts* § 670, pp. 159-60 (3d ed.1961)).

The Court's finding that the license does not include an implied best efforts covenant does not preclude Emerson from using evidence of Orion's actions and statements (both public and "behind the scenes") in support of its claim for breach of the implied covenant of good faith and fair dealing.

## CONCLUSION

For the foregoing reasons, the Court has determined to grant Orion's motion for summary judgment to the extent that Orion has requested a finding that the license did not subject Orion to an express or implied obligation to use best efforts in performing under the license.